IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JESUS AMURAHABY CELESTIN-ORTEGA,<br>a/k/a FLACO;<br>TRINIDAD TORRES MERAZ;<br>EDGAR HERNANDEZ,<br>a/k/a IVAN EDGAR HERNANDEZ VASQUEZ;<br>MARIA DE LA CRUZ ESTRADA MORENO;<br>JESSE ROCHA;<br>RAFAEL BUENO-NAVA;<br>RYAN JAMES STEVENS;<br>CHRISTIAN IVAN GONZALEZ; and<br>MARTINA LUCIA MENDEZ | **I N D I C T M E N T**<br><br>Case No.<br><br>Violations: 21 U.S.C. §§ 846, 848(a), 848(b), 848(c), 848(s), 853, 952, 960, 963, and 970; 18 U.S.C. §§ 982(a)(1), 1956(h), and 2 |

## COUNT ONE

**Conspiracy to Possess with Intent to Distribute and Distribute Controlled Substances**

The Grand Jury Charges:

From in or about January 2022 and continuously until the date of this Indictment, in the District of North Dakota, and states of Minnesota, California, Colorado, Georgia, Missouri, Texas, Arizona and elsewhere,

JESUS AMURAHABY CELESTIN-ORTEGA, a/k/a FLACO;
TRINIDAD TORRES MERAZ;
EDGAR HERNANDEZ, a/k/a IVAN EDGAR HERNANDEZ VASQUEZ;
MARIA DE LA CRUZ ESTRADA MORENO;
JESSE ROCHA;
RAFAEL BUENO-NAVA;
RYAN JAMES STEVENS;
CHRISTIAN IVAN GONZALEZ; and
MARTINA LUCIA MENDEZ

did knowingly and intentionally combine, conspire, confederate, and agree together and with others, both known and unknown to the grand jury, to possess with intent to distribute and distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance; 1000 grams or more of a mixture and substance containing heroin, a Schedule I controlled substance; and 400 grams or more of a mixture and substance containing a detectable amount of fentanyl,[1] a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

## Drug Quantity Finding

The grand jury specifically finds that to each of the named defendants, this conspiracy moved more than 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, as provided in 21 U.S.C.§ 841(b)(1)(A)(viii). The grand jury specifically finds that to each of the named defendants, this conspiracy moved more than 1000 grams of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, as provided in 21 U.S.C. § 841(b)(1)(A)(i). The grand jury specifically finds that to each of the named defendants, this conspiracy moved more than 400 grams of a mixture and substance containing fentanyl, a Schedule II controlled substance, as provided in 21 U.S.C. § 841(b)(1)(A)(vi). These amounts are attributable to the defendants as a result of their conduct and the conduct of other co-conspirators that was reasonably foreseeable to them.

---

[1] 21 U.S.C. § 841(b)(1)(A)(vi):  The chemical structure of fentanyl is N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide.

2

## Prior Convictions

In accordance with Title 21, United States Code, Sections 841 and 851, the grand jury finds the following:

Before JESUS AMURAHABY CELESTIN-ORTEGA, a/k/a FLACO, committed the offenses charged in this Indictment, JESUS AMURAHABY CELESTIN-ORTEGA, a/k/a FLACO, had a final conviction for the following serious drug felony for which he served more than 12 months of imprisonment and for which he was to be released from serving any term of imprisonment related to that offense within 15 years of the commencement of the instant offense: Distribution and Possession with Intent to Distribute 500 Grams or More of a Mixture Containing Methamphetamine in the District of Colorado in Case No. 1:19-cr-00382-PAB-1, Judgment entered on September 17, 2021.

## Overt Acts

In furtherance of this conspiracy and to effect and accomplish the objects of it, one or more of the conspirators committed the following overt acts:

1. Members of the conspiracy were receiving controlled substances from Mexico. Controlled substances were imported into the United States and transported and shipped to North Dakota and elsewhere in the United States for distribution. Members of the conspiracy paid money for these controlled substances directly or indirectly to members in the United States and Mexico;

2. It was further a part of said conspiracy that the defendants and others would and did possess with intent to distribute and did distribute 500 grams or more of a mixture and

substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, within the states of North Dakota, California, and elsewhere;

3. It was further a part of said conspiracy that the defendants and others would and did possess with intent to distribute and did distribute a mixture and substance containing in excess of 1000 grams of a detectable amount of heroin, a Schedule I controlled substance, within the state of Colorado, and elsewhere;

4. It was further a part of said conspiracy that the defendants and others would and did possess with intent to distribute and did distribute a mixture and substance containing in excess of 400 grams of a detectable amount of fentanyl, a Schedule II controlled substance, within the state of North Dakota, and elsewhere;

5. It was further a part of said conspiracy that the defendants and others would and did use violence and the threat of violence to ensure payment and to attempt to conceal their activities;

6. It was further a part of said conspiracy that the defendants and others would and did use telecommunication facilities, including various smart phone applications, in an effort to hide illicit communications from law enforcement;

7. It was further a part of said conspiracy that the defendants and others would and did use United States currency in their drug transactions;

8. On or about June 16, 2023, co-conspirators distributed approximately 15,000 pills (approximately 1,500 grams) of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, in Fargo, North Dakota;

9. On or about July 26, 2023, a controlled payment of $5,000 was made to a co-

4

conspirator in Rialto, California;

10. On or about October 5, 2023, co-conspirator JESSE ROCHA distributed approximately one kilogram (approximately 1,000 grams) of a mixture and substance containing heroin in Aurora, Colorado;

11. On or about November 2, 2023, an undercover law enforcement agent paid co-conspirator RAFAEL BUENO-NAVA $10,000 in cash in Fargo, North Dakota, as partial payment for controlled substances;

12. On or about November 16, 2023, co-conspirator JESSE ROCHA possessed with intent to distribute approximately two kilograms (approximately 2,000 grams) of a mixture and substance containing heroin in Thornton, Colorado;

13. On or about December 4, 2023, co-conspirators shipped approximately 5 kilograms (approximately 10 pounds) of a mixture and substance containing methamphetamine to Fargo, North Dakota;

14. On or about December 14, 2023, an undercover law enforcement officer delivered $5,000 to the residence of MARIA DE LA CRUZ ESTRADA MORENO in El Paso, Texas, as partial payment for controlled substances;

15. On or about January 4, 2024, an undercover law enforcement agent paid co-conspirator RAFAEL BUENO-NAVA $10,000 in cash in Rockville, Minnesota, as partial payment for controlled substances;

16. On or about February 12, 2024, co-conspirators shipped approximately 3.5 kilograms (approximately 7 pounds) of a mixture and substance containing methamphetamine to Fargo, North Dakota;

17. On or about February 12, 2024, co-conspirators shipped approximately 1 kilogram (approximately 2.2 pounds) of a mixture and substance containing heroin to Grand Forks, North Dakota; and

18. Defendant JESUS AMURAHABY CELESTIN-ORTEGA, a/k/a FLACO, was a leader, organizer, manager, and supervisor in this conspiracy and did so from inside the Federal Bureau of Prisons medium security facility in Florence, Colorado;

In violation of Title 21, United States Code, Section 846 and <u>Pinkerton v. United States,</u> 328 U.S. 640 (1946).

## COUNT TWO

**Conspiracy to Import Controlled Substances into the United States**

The Grand Jury Further Charges:

From in or about January 2022 and continuously until the date of this Indictment, in the District of North Dakota, and states of Minnesota, California, Colorado, Georgia, Missouri, Texas, Arizona, and elsewhere,

> JESUS AMURAHABY CELESTIN-ORTEGA, a/k/a FLACO;
> TRINIDAD TORRES MERAZ;
> MARIA DE LA CRUZ ESTRADA MORENO;
> RAFAEL BUENO-NAVA;
> RYAN JAMES STEVENS; and
> MARTINA LUCIA MENDEZ

did knowingly and intentionally combine, conspire, confederate, and agree together and with others, both known and unknown to the grand jury, to import into the United States from Mexico, 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance; 1000 grams or more of a mixture and substance containing heroin, a Schedule I controlled substance; 400 grams or more of a mixture and substance containing a detectable amount of fentanyl,[2] a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 952(a), 960(a)(1), 960(b)(1)(A), 960(b)(1)(F), 960(b)(1)(H), and 963; and Title 18, United States Code, Section 2.

---

[2] 21 U.S.C. § 960(b)(1)(F): The chemical structure of fentanyl is N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide.

### Drug Quantity Finding

The grand jury specifically finds that, as to each of the named defendants, this conspiracy moved more than 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, as provided in 21 U.S.C. § 960(b)(1)(H). The grand jury specifically finds that, as to each of the named defendants, this conspiracy moved more than 1000 grams of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, as provided in 21 U.S.C. § 960(b)(1)(A). The grand jury specifically finds that, as to each of the named defendants, this conspiracy moved more than 400 grams of a mixture and substance containing fentanyl, a Schedule II controlled substance, as provided in 21 U.S.C. § 960(b)(1)(F). These amounts are attributable to the defendants as a result of their conduct and the conduct of other co-conspirators that was reasonably foreseeable to them.

### Prior Convictions

In accordance with Title 21, United States Code, Sections 841 and 851, the grand jury finds the following:

Before JESUS AMURAHABY CELESTIN-ORTEGA, a/k/a FLACO, committed the offenses charged in this Indictment, JESUS AMURAHABY CELESTIN-ORTEGA, a/k/a FLACO, had a final conviction for the following serious drug felony for which he served more than 12 months of imprisonment and for which he was to be released from serving any term of imprisonment related to that offense within 15 years of the commencement of the instant offense: Distribution and Possession with Intent to Distribute 500 Grams or More of

a Mixture Containing Methamphetamine in the District of Colorado in Case No. 1:19-cr-00382-PAB-1, Judgment entered on September 17, 2021.

## Overt Acts

In furtherance of this conspiracy and to effect and accomplish the objects of it, one or more of the conspirators committed the following overt acts:

1. Members of the conspiracy were receiving controlled substances from Mexico. Controlled substances were imported into the United States and transported and shipped to North Dakota and elsewhere in the United States for distribution. Members of the conspiracy paid money for these controlled substances directly or indirectly to members in the United States and Mexico;

2. It was further a part of said conspiracy that the defendants and others would and did possess with intent to distribute and did distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, within the states of North Dakota, California, and elsewhere;

3. It was further a part of said conspiracy that the defendants and others would and did possess with intent to distribute and did distribute a mixture and substance containing in excess of 1000 grams of a detectable amount of heroin, a Schedule I controlled substance, within the state of Colorado, and elsewhere;

4. It was further a part of said conspiracy that the defendants and others would and did possess with intent to distribute and did distribute a mixture and substance containing in excess of 400 grams of a detectable amount of fentanyl, a Schedule II controlled substance, within the state of North Dakota, and elsewhere;

9

5. It was further a part of said conspiracy that the defendants and others would and did use violence and the threat of violence to ensure payment and to attempt to conceal their activities;

6. It was further a part of said conspiracy that the defendants and others would and did use telecommunication facilities, including various smart phone applications, in an effort to hide illicit communications from law enforcement;

7. It was further a part of said conspiracy that the defendants and others would and did use United States currency in their drug transactions;

8. On or about June 16, 2023, co-conspirators distributed approximately 15,000 pills (approximately 1,500 grams) of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, in Fargo, North Dakota;

9. On or about July 26, 2023, a controlled payment of $5,000 was made to a co-conspirator in Rialto, California;

10. On or about October 5, 2023, co-conspirator JESSE ROCHA distributed approximately one kilogram (approximately 1,000 grams) of a mixture and substance containing heroin in Aurora, Colorado;

11. On or about November 2, 2023, an undercover law enforcement agent paid RAFAEL BUENO-NAVA $10,000 in cash in Fargo, North Dakota, as partial payment for controlled substances;

12. On or about November 16, 2023, co-conspirator JESSE ROCHA possessed with intent to distribute approximately two kilograms (approximately 2,000 grams) of a mixture and substance containing heroin in Thornton, Colorado;

13. On or about December 4, 2023, co-conspirators shipped approximately 5 kilograms (approximately 10 pounds) of a mixture and substance containing methamphetamine to Fargo, North Dakota;

14. On or about December 14, 2023, an undercover law enforcement officer delivered $5,000 to the residence of MARIA DE LA CRUZ ESTRADA MORENO in El Paso, Texas, as partial payment for controlled substances;

15. On or about January 4, 2024, an undercover law enforcement agent paid co-conspirator RAFAEL BUENO-NAVA $10,000 in cash in Rockville, Minnesota, as partial payment for controlled substances;

16. On or about February 12, 2024, co-conspirators shipped approximately 3.5 kilograms (approximately 7 pounds) of a mixture and substance containing methamphetamine to Fargo, North Dakota;

17. On or about February 12, 2024, co-conspirators shipped approximately 1 kilogram (approximately 2.2 pounds) of a mixture and substance containing heroin to Grand Forks, North Dakota; and

18. Defendant JESUS AMURAHABY CELESTIN-ORTEGA a/k/a FLACO, was a leader, organizer, manager, and supervisor in this conspiracy and did so from inside the Federal Bureau of Prisons medium security facility in Florence, Colorado;

In violation of Title 21, United States Code, Section 963 and Pinkerton v. United States, 328 U.S. 640 (1946).

## COUNT THREE

## Money Laundering Conspiracy

The Grand Jury Further Charges:

From in or about January 2022 to the date of this Indictment, in the District of North Dakota, and states of Minnesota, California, Colorado, Georgia, Missouri, Texas, Arizona, and elsewhere,

> JESUS AMURAHABY CELESTIN-ORTEGA, a/k/a FLACO;
> TRINIDAD TORRES MERAZ;
> MARIA DE LA CRUZ ESTRADA MORENO; and
> RAFAEL BUENO-NAVA

did knowingly and intentionally combine, conspire, confederate, and agree together and with others to commit an offense against the United States, specifically, to violate Title 18, United States Code, Sections 1956(a)(1)(B)(i), 1956(a)(2)(B)(i), 1956(a)(2)(A), and 1956(a)(3)(B), in that members of the conspiracy did knowingly and intentionally conduct and attempt to conduct financial transactions affecting interstate commerce and transfer, transmit, and transport monetary instruments or funds from the United States to Mexico as described below, which involved the proceeds of a specified unlawful activity, that is, the distribution and importation of controlled substances, in violation of Title 21, United States Code, Sections 841, 846, 848, 952, 960, and 963, (1) knowing that monetary instruments or funds represented the proceeds of specified unlawful activity and that the transactions were designed in whole and in part to conceal the nature, source, location, ownership, or control of specified unlawful activities, and (2) with the intent to promote a specified unlawful

activity, that is, the distribution of controlled substances, in violation of Title 18, United States Code, Section 1956(h).

## Manner and Means

In furtherance of this conspiracy and to effect and accomplish the objects of it, one or more of the conspirators committed the following overt acts:

1. As alleged in Counts One and Two of this Indictment, which are incorporated herein by reference, during the course of and to further said conspiracy, members of the conspiracy sold controlled substances across the United States including, but not limited to, North Dakota, Minnesota, California, Colorado, Georgia, Missouri, Texas, Arizona, and elsewhere;

2. During the time frame of the conspiracy, members of the conspiracy imported and distributed controlled substances. Co-conspirators transported cash to Mexico and also conducted numerous financial transactions including, but not limited to, money order services, money transfer services, and bank transfers, using United States currency, and currency application systems (mobile apps) to pay for controlled substances; and

3. The purpose of transferring currency in this fashion was to promote the trafficking of controlled substances from Mexico to the United States and to conceal the nature, source, location, ownership, or control of the proceeds and to promote the distribution of controlled substances;

4. Specific transactions include, but are not limited to:

    a. On June 23, 2023, a $4,125.40 bank deposit into Bank of America account ending in 3512;

b. On July 14, 2023, a $950 Western Union wire to D.R.V. in Mexico;

c. On July 15, 2023, a $950 Western Union wire to M.C.D.R. in Mexico;

d. On August 4, 2023, a $950 Western Union wire to J.G.V. in Mexico;

e. On August 4, 2023, a $950 Western Union wire to C.P.C. in Mexico;

f. On August 7, 2023, a $950 Western Union wire to A.V.H. in Mexico;

g. On August 24, 2023, a $1000 Western Union wire to C.P.C. in Mexico;

h. On September 1, 2023, a $1000 MoneyGram wire to P.B.Z. in Mexico;

i. On September 5, 2023, a $1000 MoneyGram wire to K.A.M.B. in Mexico;

j. On September 6, 2023, a $950 MoneyGram wire to J.E.I.T. in Mexico;

k. On September 11, 2023, a $950 MoneyGram wire to J.G.V. in Mexico;

l. On October 12, 2023, a $900 Western Union wire to C. M.M in Mexico;

m. On October 23, 2023, a $950 Western Union wire to J.E.I.T. in Mexico;

n. On October 27, 2023, a $1000 Western Union wire to C.M.M. in Mexico;

o. On December 4, 2023, a $1500 Western Union wire to M.G.G.E. in Mexico;

p. On December 8, 2023, two RIA wires of $950 each to C.M.M. in Mexico;

q. On February 10, 2024, a $950 Western Union wire to J.A.A.R. in Mexico;

r. On February 12, 2024, a $950 RIA wire to C.M.M. in Mexico;

s. Miscellaneous payments made to CashApp accounts;

t. Miscellaneous payments made to PayPal accounts; and

u. Miscellaneous payments made to Bureau of Prisons accounts.

In violation of Title 18, United States Code, Section 1956(h).

## COUNT FOUR

### Continuing Criminal Enterprise

The Grand Jury Further Charges:

From in or about January 2022 to the date of this Indictment, in the District of North Dakota, and states of Minnesota, California, Colorado, Georgia, Missouri, Texas, Arizona, and elsewhere,

JESUS AMURAHABY CELESTIN-ORTEGA, a/k/a FLACO,

did knowingly and intentionally engage in a Continuing Criminal Enterprise in that he violated Title 21, United States Code, Sections 841(a)(1), 846, 952(a), 960, and 963 including, but not limited to, the violations alleged in Counts One and Two of this Indictment, which are incorporated herein by reference. The above-described violations were, and are, part of a continuing series of violations. These continuing series of violations were undertaken by JESUS AMURAHABY CELESTIN-ORTEGA, a/k/a FLACO, in concert with at least five other persons with respect to whom JESUS AMURAHABY CELESTIN-ORTEGA, a/k/a FLACO, occupied a position of organizer, supervisor, and manager. These people include, but are not limited to: (1) A.J.P., (2) RYAN JAMES STEVENS, (3) T.K. Jr., (4) W.D.K., (5) P.O.G. Jr., (6) JESSE ROCHA, (7) RAFAEL BUENO-NAVA, (8) L.P., (9) M.C.D.R., (10) J.G.V., (11) C.P.C., (12) A.V.H., (13) P.B.Z., (14) K.A.M.B., (15) J.E.I.T., (16) C.M.M., (17) M.G.G.E., and (18) J.A.A.R.

From this continuing series of violations, JESUS AMURAHABY CELESTIN-ORTEGA, a/k/a FLACO, obtained a substantial income.

The United States specifically alleges that JESUS AMURAHABY CELESTIN-ORTEGA, a/k/a FLACO, was a principal administrator, organizer, and leader of the enterprise and the enterprise moved at least 10 kilograms of a mixture and substance containing methamphetamine, 200 times the drug quantity described in 21 U.S.C. § 841(b)(1)(B);

In violation of Title 21, United States Code, Sections 848(a), 848(b), 848(c), and 848(s), and Title 18, United States Code, Section 2.

FORFEITURE NOTICE

Upon the conviction on Counts One, Two, Three, and Four as alleged in this Indictment,

> JESUS AMURAHABY CELESTIN-ORTEGA, a/k/a FLACO;
> TRINIDAD TORRES MERAZ;
> EDGAR HERNANDEZ, a/k/a IVAN EDGAR HERNANDEZ VASQUEZ;
> MARIA DE LA CRUZ ESTRADA MORENO;
> JESSE ROCHA;
> RAFAEL BUENO-NAVA;
> RYAN JAMES STEVENS;
> CHRISTIAN IVAN GONZALEZ; and
> MARTINA LUCIA MENDEZ

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), and Title 21, United States Code, Sections 853 and 970, all right, title, and interest in any property constituting or derived from proceeds obtained, directly or indirectly, as a result of the violations of Title 21, United States Code, Sections 841, 846, 848, 952, 960, and 963, any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the said violations, any property involved in the violation of Title 18, United States Code, Section 1956(a) and (h), and a sum of money equal to the total amount of proceeds obtained as a result of Counts One, Two, and Four, and property involved in Count Three, including, but not limited to:

- $ 307,721 in United States currency.

If any of the forfeitable property as a result of any act or omission of the defendant(s):

  (a) cannot be located upon the exercise of due diligence;

  (b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property.

A TRUE BILL:

See Note*
Foreperson

/s/ Mac Schneider
MAC SCHNEIDER
United States Attorney

MARLON COBAR
Chief
Narcotic and Dangerous Drug Section
Criminal Division

Christopher C. Myers
Assistant United States Attorney

Lernik Begian
Trial Attorney
Narcotic and Dangerous Drug Section
Criminal Division

* No foreperson signature. Original Indictment has been corrected by Order of the Court.