IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>     v.<br><br>MARIA DE LA CRUZ ESTRADA<br>MORENO,<br><br>     Defendant. | Case No. 3:24-cr-00061-4<br><br>**PLEA AGREEMENT** |

Pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure, the United States of America, by its attorneys, Mac Schneider, United States Attorney for the District of North Dakota, and Christopher C. Myers, Assistant United States Attorney; Marlon Cobar, Chief of the Narcotic and Dangerous Drug Section, Criminal Division, and Tara Arndt and Lernik Begian, Trial Attorneys; Defendant, MARIA DE LA CRUZ ESTRADA MORENO; and Defendant's counsel, Mark Meyer, agree to the following:

   1. Defendant acknowledges the Indictment charges violations of Title 21, United States Code, Sections 846 and 963, and Title 18, United States Code, Section 1956(h).

   2. Defendant has read the charges and Defendant's attorney has fully explained the charges to Defendant.

   3. Defendant fully understands the nature and elements of the charged crimes.

   4. Defendant will voluntarily plead guilty to Count 3 of the Indictment and admit to the forfeiture allegation.

5.      The parties agree this Plea Agreement shall be filed as part of the Court record and be governed by Federal Rule of Criminal Procedure 11(c). The parties specifically agree that Rule 11(c)(1)(C) does not apply. If the United States makes the non-binding recommendations specified in this Plea Agreement, then Defendant acknowledges that this agreement will have been fulfilled. Except as provided in Rule 11(c)(5), the Court's refusal to accept any or all terms of the Plea Agreement does not give Defendant a right to withdraw Defendant's guilty plea.

6.      Defendant will plead guilty because Defendant is in fact guilty of the charge. In pleading guilty to Count 3, Defendant acknowledges that:

From in or about January 2022 to the date of the Indictment, in the District of North Dakota, and states of Minnesota, California, Colorado, Georgia, Missouri, Texas, Arizona, and elsewhere,

JESUS AMURAHABY CELESTIN-ORTEGA, a/k/a FLACO;
TRINIDAD TORRES MERAZ;
MARIA DE LA CRUZ ESTRADA MORENO; and
RAFAEL BUENO-NAVA

did knowingly and intentionally combine, conspire, confederate, and agree together and with others to commit an offense against the United States, specifically, to violate Title 18, United States Code, Sections 1956(a)(1)(B)(i), 1956(a)(2)(B)(i), 1956(a)(2)(A), and 1956(a)(3)(B), in that members of the conspiracy did knowingly and intentionally conduct and attempt to conduct financial transactions affecting interstate commerce and transfer, transmit, and transport monetary instruments or funds from the United States to Mexico as described below, which involved the proceeds of a specified unlawful activity, that is, the distribution and importation of controlled substances, in violation of Title 21,

United States Code, Sections 841, 846, 848, 952, 960, and 963, (1) knowing that monetary instruments or funds represented the proceeds of specified unlawful activity and that the transactions were designed in whole and in part to conceal the nature, source, location, ownership, or control of specified unlawful activities, and (2) with the intent to promote a specified unlawful activity, that is, the distribution of controlled substances, in violation of Title 18, United States Code, Section 1956(h).

Manner and Means

7.      In furtherance of this conspiracy and to effect and accomplish the objects of it, one or more of the conspirators committed the following overt acts:

   a.   As alleged in Counts One and Two of this Indictment, which are incorporated herein by reference, during the course of and to further said conspiracy, members of the conspiracy sold controlled substances across the United States including, but not limited to, North Dakota, Minnesota, California, Colorado, Georgia, Missouri, Texas, Arizona, and elsewhere;

   b.   During the time frame of the conspiracy, members of the conspiracy imported and distributed controlled substances. Co-conspirators transported cash to Mexico and also conducted numerous financial transactions including, but not limited to, money order services, money transfer services, and bank transfers, using United States currency, and currency application systems (mobile apps) to pay for controlled substances; and

   c.   The purpose of transferring currency in this fashion was to promote the trafficking of controlled substances from Mexico to the United States and to conceal the nature, source, location, ownership, or control of the

proceeds and to promote the distribution of controlled substances;
Specific transactions include, but are not limited to:

a.   On June 23, 2023, a $4,125.40 bank deposit into Bank of America account ending in 3512;

b.   On July 14, 2023, a $950 Western Union wire to D.R.V. in Mexico;

c.   On July 15, 2023, a $950 Western Union wire to M.C.D.R. in Mexico;

d.   On August 4, 2023, a $950 Western Union wire to J.G.V. in Mexico;

e.   On August 4, 2023, a $950 Western Union wire to C.P.C. in Mexico;

f.   On August 7, 2023, a $950 Western Union wire to A.V.H. in Mexico;

g.   On August 24, 2023, a $1000 Western Union wire to C.P.C. in Mexico;

h.   On September 1, 2023, a $1000 MoneyGram wire to P.B.Z. in Mexico;

i.   On September 5, 2023, a $1000 MoneyGram wire to K.A.M.B. in Mexico;

j.   On September 6, 2023, a $950 MoneyGram wire to J.E.I.T. in Mexico;

k.   On September 11, 2023, a $950 MoneyGram wire to J.G.V. in Mexico;

l.   On October 12, 2023, a $900 Western Union wire to C. M.M in Mexico;

m.   On October 23, 2023, a $950 Western Union wire to J.E.I.T. in Mexico;

n.   On October 27, 2023, a $1000 Western Union wire to C.M.M. in Mexico;

o.   On December 4, 2023, a $1500 Western Union wire to M.G.G.E. in Mexico;

p. On December 8, 2023, two RIA wires of $950 each to C.M.M. in Mexico;

q. On February 10, 2024, a $950 Western Union wire to J.A.A.R. in Mexico;

r. On February 12, 2024, a $950 RIA wire to C.M.M. in Mexico;

s. Miscellaneous payments made to CashApp accounts;

t. Miscellaneous payments made to PayPal accounts; and

u. Miscellaneous payments made to Bureau of Prisons accounts.

all in violation of Title 18, United States Code, Section 1956(h).

As to Forfeiture, Defendant admits that upon the conviction of Count Three as alleged in the Indictment,

JESUS AMURAHABY CELESTIN-ORTEGA, a/k/a FLACO;
TRINIDAD TORRES MERAZ;

MARIA DE LA CRUZ ESTRADA MORENO;
JESSE ROCHA;
RAFAEL BUENO-NAVA;
RYAN JAMES STEVENS;
CHRISTAN IVAN GONZALEZ; and

shall forfeit to the United States, any property involved in the violation of Title 18, United States Code, Section 1956(a) and (h), and a sum of money equal to the total amount of property involved in Count Three including, but not limited to:

• $ 307,721 in United States currency.

If any of the forfeitable property as a result of any act or omission of the defendant(s):

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said Defendant up to the value of the forfeitable property.

8.     Defendant understands the following maximum penalties apply:

<u>Count Three</u>

| | |
|---|---|
| Imprisonment: | 20 years |
| Fine: | $500,000 |
| Supervised Release: | 5 years |
| Special Assessment: | $100 |

Defendant agrees to pay the Clerk of United States District Court the special assessment on or before the day of sentencing.

9.     Defendant understands that by pleading guilty Defendant surrenders rights, including:

(a)     The right to a speedy public jury trial and related rights as follow:

(i)     A jury would be composed of twelve (12) lay persons selected at random. Defendant and Defendant's attorney would help choose the jurors by removing prospective jurors "for cause," where actual bias or other disqualification is shown; or by removing jurors without cause by

6

exercising so-called peremptory challenges. The jury would have to agree

unanimously before it could return a verdict. The jury would be instructed

that Defendant is presumed innocent and that it could not return a guilty

verdict unless it found Defendant guilty beyond a reasonable doubt.

(ii)     If a trial were held without a jury, then the Judge would find

the facts and determine whether Defendant was guilty beyond a reasonable

doubt.

(iii)     At a trial, whether by a jury or Judge, the United States is

required to present witness testimony and other evidence against

Defendant. Defendant's attorney can confront and examine them. In turn,

the defense can present witness testimony and other evidence. If witnesses

for Defendant refuse to appear voluntarily, Defendant can require their

attendance through the subpoena power of the Court.

(iv)     At a trial, Defendant has a privilege against self-

incrimination; thus, Defendant can decline to testify. No inference of guilt

can be drawn from Defendant's refusal to testify. Defendant can choose to

testify but cannot be required to testify.

(b)     Defendant has a right to remain silent. However, under terms of the

Plea Agreement, the Judge will likely ask Defendant questions about Defendant's

criminal conduct to ensure that there is a factual basis for Defendant's plea.

10.     Defendant understands that by pleading guilty Defendant is giving up all of

the rights set forth in the prior paragraph, and there will be no trial. Defendant's attorney

has explained those rights, and consequences of Defendant's waiver.

11.     The Court shall impose a sentence sufficient to comply with purposes set forth in the Sentencing Reform Act. In doing so, the Court shall consider factors set forth in 18 U.S.C. § 3553(a) and must consult and consider the United States' Sentencing Commission, Guidelines Manual, (Nov. 2023) (USSG). Defendant understands that the United States Attorney's Office will fully apprise the District Court and the United States Probation and Pretrial Services Office of the nature, scope, and extent of Defendant's conduct, including all matters in aggravation and mitigation relevant to the issue of sentencing. The United States expressly reserves the right to appeal from an unreasonable sentence.

12.     This Plea Agreement is binding only upon the United States Attorney for the District of North Dakota and the Narcotic and Dangerous Drug Section of the Criminal Division, United States Department of Justice. It does not bind any United States Attorney outside the District of North Dakota, nor does it bind any state or local prosecutor. They remain free to prosecute Defendant for any offenses under their jurisdiction. This Plea Agreement also does not bar or compromise any civil or administrative claim.

13.     Defendant understands the United States Attorney reserves the right to notify any local, state, or federal agency by whom Defendant is licensed, or with whom Defendant does business, of Defendant's conviction.

14.     The parties agree that the base offense level under the Sentencing Guidelines for Defendant's conduct is 30. (USSG § 2D1.1 (c)(5) (reasonably foreseeable conspiracy involved more than 500 grams of a mixture and substance containing

methamphetamine)).

> +2 levels for money laundering USSG § 2S1.1
>
> -3 levels for mitigating role USSG § 3B1.2
>
> - 2 level if zero-point offender applies USSG § 4C1.1

The United States reserves the right to argue a higher offense level at sentencing if it is determined through the pre-sentence investigation that Defendant is a "career offender" pursuant to USSG § 4B1.1.

15.     At sentencing, United States agrees to recommend a 2-level downward adjustment for acceptance of responsibility, provided Defendant has demonstrated a genuine acceptance of responsibility. (USSG § 3E1.1(a)).  The United States further agrees to move for an additional 1-level downward adjustment for timely notifying the United States of Defendant's intention to enter a guilty plea, thus permitting the Court and the United States to allocate their resources efficiently. (USSG § 3E1.1(b)).

16.     The parties stipulate and agree that, as of the date of this agreement, Defendant appears to qualify for a two-level downward adjustment for acceptance of responsibility. However, the government may, in its discretion, contest the adjustment under USSG § 3E1.1(a) should Defendant subsequently fail to continue to accept responsibility by failing to abide by the conditions of release, if applicable; by providing false information to the Court, the probation office, or the United States; by unlawfully using controlled substances; by attempting to obstruct justice; by breaching this Plea Agreement; or by acting in a way that is inconsistent with, or failing to act in any way that is consistent with the granting of the adjustment under USSG § 3E1.1(a).

17.     Neither the Court nor the Probation Office is a party to the Plea Agreement. Neither the Court nor the Probation Office is bound by the Plea Agreement as to determining the Sentencing Guideline range. The Court may depart from the applicable guidelines range if the Court, on the record, states factors not contemplated by the Sentencing Guidelines' Commission to justify the departure. Both parties reserve the right to object to any departure. See USSG § 1B1.1, comment. (n.1) (defines "departure"). There may be other adjustments the parties have not agreed upon.

18.     At sentencing, the United States will:

(a)     Recommend a sentence at the low end of the applicable Guideline range, or the minimum mandatory, whichever is greater;

(b)     Move to dismiss the remaining counts of the Indictment.

19.     Defendant acknowledges and understands that if Defendant violates any term of this Plea Agreement, engages in any further criminal activity, or fails to appear

for sentencing, the United States will be released from its commitments. In that event, this Plea Agreement shall become null and void at the discretion of the United States, and Defendant will face the following consequences: (1) all testimony and other information Defendant has provided at any time to attorneys, employees, or law enforcement officers of the government, to the Court, or to the Federal Grand Jury, may be used against Defendant in any prosecution or proceeding; and (2) the United States will be entitled to reinstate previously dismissed charges and/or pursue additional charges against Defendant and to use any information obtained directly or indirectly from Defendant in those additional prosecutions. Nothing in this agreement prevents the United States from prosecuting Defendant for perjury, false statement(s), or false declaration(s), if Defendant commits such acts in connection with this agreement or otherwise.

20.     Defendant acknowledges the provisions of Title 18, United States Code, Sections 2259 and 3663A, which require the Court to order restitution. Defendant agrees to pay restitution as may be ordered by the Court. Defendant acknowledges and agrees that the Court will order Defendant to make restitution for all loss caused by Defendant's conduct, regardless of whether counts of the Indictment will be dismissed as part of this Plea Agreement. Defendant further agrees to grant the United States a wage assignment, liquidate assets, or complete any other tasks the Court finds reasonable and appropriate for the prompt payment of any restitution or fine ordered by the Court.

21.     The United States will file a Supplement in this case, as is routinely done in every case, even though there may or may not be any additional terms. Defendant and

Defendant's attorney acknowledge that no threats, promises, or representations exist
beyond the terms of this Plea Agreement.

22.     **Defendant's Waiver of Appeal**. Defendant acknowledges having been
advised by counsel of Defendant's rights to appeal the conviction or sentence in this case,
including the appeal right conferred by 18 U.S.C. § 3742, and to challenge the conviction
or sentence collaterally through post-conviction proceedings, including proceedings
under 28 U.S.C. § 2255. Defendant understands these rights, and in exchange for the
concessions made by the United States in this Plea Agreement, Defendant hereby
knowingly and voluntarily waives these rights, except as specifically reserved herein.
Defendant's waiver of these rights includes, but is not limited to, a waiver of all rights to
appeal or to collaterally attack: Defendant's conviction or sentence; all non-jurisdictional
issues; any assessment, restitution or forfeiture order; the constitutionality of the
applicable guidelines; and the constitutionality of the statute(s) to which Defendant is
pleading guilty or under which Defendant is sentenced, or to argue that the admitted
conduct does not fall within the scope of the statute(s). Defendant reserves the right to
appeal a sentence of imprisonment imposed above the upper end of the applicable
guidelines range and the right to appeal or to collaterally attack the conviction or sentence
based on a claim of ineffective assistance of counsel that challenges the validity of the
guilty plea or this waiver.

23.     By signing this Plea Agreement, Defendant further specifically waives
Defendant's right to seek to withdraw Defendant's plea of guilty, pursuant to Federal
Rule of Criminal Procedure 11(d), once the plea has been entered in accordance with

this agreement. The appellate court will enforce such waivers. Defendant agrees that any attempt to withdraw Defendant's plea will be denied and any appeal of such denial should be dismissed.

24.    Defendant understands that by pleading guilty she will be convicted, and that any individual convicted who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant's attorney has explained this consequence of her guilty plea.

25.    The Assistant United States Attorney, Trial Attorneys, and attorney for Defendant agree to abide by the provisions of Rule 32(f) of the Federal Rules of Criminal Procedure. The attorneys acknowledge their obligation to use good-faith efforts to resolve any disputes regarding the Presentence Investigation Report (PSIR) through a presentence conference or other informal procedures.

26.    Defendant acknowledges reading and understanding all provisions of the Plea Agreement. Defendant and Defendant's attorney have discussed the case and reviewed the Plea Agreement. They have discussed Defendant's constitutional and other rights, including, but not limited to, Defendant's plea-statement rights under Rule 410 of the Federal

Rules of Evidence and Rule 11(f) of the Federal Rules of Criminal Procedure.

AGREED:

MAC SCHNEIDER
United States Attorney

Dated: _____ 7/30/2024 _____

By: CHRISTOPHER C. MYERS
Assistant United States Attorney

Dated: _____ 7.29.2024 _____

TARA ARNDT
LERNIK BEGIAN
Trial Attorneys

Dated: _____ 7-26-24 _____

MARIA DE LA CRUZ ESTRADA MORENO
Defendant

Dated: _____ 7-29-24 _____

MARK MEYER
Attorney for Defendant

14