IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:24-cr-00061-5 |
| Plaintiff, | **PLEA AGREEMENT** |
| v. | |
| JESSE ROCHA, | |
| Defendant. | |

Pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure, the United States of America, by its attorneys, Mac Schneider, United States Attorney for the District of North Dakota, and Christopher C. Myers, Assistant United States Attorney; Marlon Cobar, Chief of the Narcotic and Dangerous Drug Section, Criminal Division, and Tara Arndt and Lernik Begian, Trial Attorneys; Defendant, JESSE ROCHA; and Defendant's counsel, Chris Snyder, agree to the following:

1.     Defendant acknowledges the Indictment charges a violation of Title 21, United States Code, Sections 846.

2.     Defendant has read the charge and Defendant's attorney has fully explained the charge to Defendant.

3.     Defendant fully understands the nature and elements of the charged crime.

4.     Defendant will voluntarily plead guilty to Count One of the Indictment and admit to the forfeiture allegation.

5.      The parties agree this Plea Agreement shall be filed as part of the Court record and be governed by Federal Rule of Criminal Procedure 11(c). The parties specifically agree that Rule 11(c)(1)(C) does not apply. If the United States makes the non-binding recommendations specified in this Plea Agreement, then Defendant acknowledges that this agreement will have been fulfilled. Except as provided in Rule 11(c)(5), the Court's refusal to accept any or all terms of the Plea Agreement does not give Defendant a right to withdraw Defendant's guilty plea.

6.      Defendant will plead guilty because Defendant is in fact guilty of the charge. In pleading guilty to Count One, Defendant acknowledges that:

From in or about January 2022 and continuously until the date of this Indictment, in the District of North Dakota, and states of Minnesota, California, Colorado, Georgia, Missouri, Texas, Arizona, and elsewhere,

JESUS AMURAHABY CELESTIN-ORTEGA, a/k/a FLACO;
TRINIDAD TORRES MERAZ;
EDGAR HERNANDEZ, a/k/a IVAN EDGAR HERNANDEZ VASQUEZ;
MARIA DE LA CRUZ ESTRADA MORENO;
JESSE ROCHA;
RAFAEL BUENO-NAVA;
RYAN JAMES STEVENS;
CHRISTAN IVAN GONZALEZ; and
MARTINA LUCIA MENDEZ

did knowingly and intentionally combine, conspire, confederate, and agree together and with others, both known and unknown, to possess with intent to distribute and distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance; 1000 grams or more of a mixture and substance containing heroin, a Schedule I controlled substance; and 400 grams or more of a mixture and substance

2

containing a detectable amount of fentanyl,[1] a Schedule II controlled substance, in violation

of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section

2.

## Drug Quantity Finding

Defendant admits that this conspiracy moved more than 500 grams of a mixture and

substance containing a detectable amount of methamphetamine, a Schedule II controlled

substance, as provided in 21 U.S.C.§ 841(b)(1)(A)(viii); more than 1000 grams of a mixture and

substance containing a detectable amount of heroin, a Schedule I controlled substance, as

provided in 21 U.S.C. § 841(b)(1)(A)(i); and more than 400 grams of a mixture and substance

containing fentanyl, a Schedule II controlled substance, as provided in 21 U.S.C. §

841(b)(1)(A)(vi). These amounts are attributable to Defendant as a result of his conduct and the

conduct of other co-conspirators that were reasonably foreseeable to him.

## Overt Acts

In furtherance of this conspiracy and to effect and accomplish the objects of it, one or

more of the conspirators committed the following overt acts:

1.  Members of the conspiracy were receiving controlled substances from Mexico.

Controlled substances were imported into the United States and transported and shipped to

North Dakota and elsewhere in the United States for distribution. Members of the conspiracy

paid money for these controlled substances directly or indirectly to members in the United

States and Mexico;

---

[1]  21 U.S.C. § 841(b)(1)(A)(vi):  The chemical structure of fentanyl is N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide.

2.  It was further a part of said conspiracy that the defendants and others would and did possess with intent to distribute and did distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, within the states of North Dakota, California, and elsewhere;

3.  It was further a part of said conspiracy that the defendants and others would and did possess with intent to distribute and did distribute a mixture and substance containing in excess of 1000 grams of a detectable amount of heroin, a Schedule I controlled substance, within the state of Colorado, and elsewhere;

4.  It was further a part of said conspiracy that the defendants and others would and did possess with intent to distribute and did distribute a mixture and substance containing in excess of 400 grams of a detectable amount of fentanyl, a Schedule II controlled substance, within the state of North Dakota, and elsewhere;

5.  It was further a part of said conspiracy that the defendants and others would and did use violence and the threat of violence to ensure payment and to attempt to conceal their activities;

6.  It was further a part of said conspiracy that the defendants and others would and did use telecommunication facilities, including various smart phone applications, in an effort to hide illicit communications from law enforcement;

7.  It was further a part of said conspiracy that the defendants and others would and did use United States currency in their drug transactions;

8.  On or about June 16, 2023, co-conspirators distributed approximately 15,000 pills (approximately 1,500 grams) of a mixture and substance containing a detectable amount of

4

fentanyl, a Schedule II controlled substance, in Fargo, North Dakota;

9.  On or about July 26, 2023, a controlled payment of $5,000 was made to a co-conspirator in Rialto, California;

10.  On or about October 5, 2023, co-conspirator JESSE ROCHA distributed approximately one kilogram (approximately 1,000 grams) of a mixture and substance containing heroin in Aurora, Colorado;

11.  On or about November 2, 2023, an undercover law enforcement agent paid co-conspirator RAFAEL BUENO-NAVA $10,000 in cash in Fargo, North Dakota, as partial payment for controlled substances;

12.  On or about November 16, 2023, co-conspirator JESSE ROCHA possessed with intent to distribute approximately two kilograms (approximately 2,000 grams) of a mixture and substance containing heroin in Thornton, Colorado;

13.  On or about December 4, 2023, co-conspirators shipped approximately 5 kilograms (approximately 10 pounds) of a mixture and substance containing methamphetamine to Fargo, North Dakota;

14.  On or about December 14, 2023, an undercover law enforcement officer delivered $5,000 to the residence of MARIA DE LA CRUZ ESTRADA MORENO in El Paso, Texas, as partial payment for controlled substances;

15.  On or about January 4, 2024, an undercover law enforcement agent paid co-conspirator RAFAEL BUENO-NAVA $10,000 in cash in Rockville, Minnesota, as partial payment for controlled substances;

16.  On or about February 12, 2024, co-conspirators shipped approximately 3.5 kilograms (approximately 7 pounds) of a mixture and substance containing

methamphetamine to Fargo, North Dakota;

17.  On or about February 12, 2024, co-conspirators shipped approximately

1 kilogram (approximately 2.2 pounds) of a mixture and substance containing heroin to Grand

Forks, North Dakota; and

18.  Defendant JESUS AMURAHABY CELESTIN-ORTEGA, a/k/a FLACO, was a

leader, organizer, manager, and supervisor in this conspiracy and did so from inside the

Federal Bureau of Prisons medium security facility in Florence, Colorado;

In violation of Title 21, United States Code, Section 846 and Pinkerton v. United

States, 328 U.S. 640 (1946).

As to Forfeiture, Defendant admits that upon the conviction of Count One as alleged in

the Indictment,

JESUS AMURAHABY CELESTIN-ORTEGA, a/k/a FLACO;
TRINIDAD TORRES MERAZ;
EDGAR HERNANDEZ, a/k/a IVAN EDGAR HERNANDEZ VASQUEZ;
MARIA DE LA CRUZ ESTRADA MORENO;
JESSE ROCHA;
RAFAEL BUENO-NAVA;
RYAN JAMES STEVENS;
CHRISTAN IVAN GONZALEZ; and
MARTINA LUCIA MENDEZ

shall forfeit to the United States, pursuant to Title 21, United States Code, Sections 853 and

970, all right, title, and interest in any property constituting or derived from proceeds

obtained, directly or indirectly, as a result of a violation of Title 21, United States Code,

Sections 846, any property used, or intended to be used, in any manner or part, to commit, or

to facilitate the commission of the said violations, and a sum of money equal to the total

amount of proceeds obtained as a result of Count One, including, but not limited to:

6

- $ 307,721 in United States currency.

If any of the forfeitable property as a result of any act or omission of the defendant(s):

1.  cannot be located upon the exercise of due diligence;

2.  has been transferred or sold to, or deposited with, a third party;

3.  has been placed beyond the jurisdiction of the court;

4.  has been substantially diminished in value; or

5.  has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of Defendant up to the value of the forfeitable property.

7.     Defendant understands the following maximum penalties apply:

<u>Count One</u>

| | |
|---|---|
| Imprisonment: | Life |
| Fine: | $10 million |
| Supervised Release: | At least 5 years and up to Life |
| Special Assessment: | $100 |

Defendant agrees to pay the Clerk of United States District Court the special assessment on or before the day of sentencing.

8.     Defendant understands that by pleading guilty Defendant surrenders rights, including:

(a)     The right to a speedy public jury trial and related rights as follows:

(i)     A jury would be composed of twelve (12) lay persons

7

selected at random. Defendant and Defendant's attorney would help choose the jurors by removing prospective jurors "for cause," where actual bias or other disqualification is shown; or by removing jurors without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict. The jury would be instructed that Defendant is presumed innocent and that it could not return a guilty verdict unless it found Defendant guilty beyond a reasonable doubt.

(ii)     If a trial were held without a jury, then the Judge would find the facts and determine whether Defendant was guilty beyond a reasonable doubt.

(iii)     At a trial, whether by a jury or Judge, the United States is required to present witness testimony and other evidence against Defendant. Defendant's attorney can confront and examine them. In turn, the defense can present witness testimony and other evidence. If witnesses for Defendant refuse to appear voluntarily, Defendant can require their attendance through the subpoena power of the Court.

(iv)     At a trial, Defendant has a privilege against self-incrimination; thus, Defendant can decline to testify. No inference of guilt can be drawn from Defendant's refusal to testify. Defendant can choose to testify but cannot be required to testify.

(b)     Defendant has a right to remain silent. However, under terms of the Plea Agreement, the Judge will likely ask Defendant questions about Defendant's

criminal conduct to ensure that there is a factual basis for Defendant's plea.

9.   Defendant understands that by pleading guilty Defendant is giving up all of the rights set forth in the prior paragraph, and there will be no trial. Defendant's attorney has explained those rights, and consequences of Defendant's waiver.

10. The Court shall impose a sentence sufficient to comply with purposes set forth in the Sentencing Reform Act. In doing so, the Court shall consider factors set forth in 18 U.S.C. § 3553(a) and must consult and consider the United States' Sentencing Commission, <u>Guidelines Manual</u>, (Nov. 2023) (USSG). Defendant understands that the United States Attorney's Office will fully apprise the District Court and the United States Probation and Pretrial Services Office of the nature, scope, and extent of Defendant's conduct, including all matters in aggravation and mitigation relevant to the issue of sentencing. The United States expressly reserves the right to appeal from an unreasonable sentence.

11.  This Plea Agreement is binding only upon the United States Attorney for the District of North Dakota and the Narcotic and Dangerous Drug Section of the Criminal Division, United States Department of Justice. It does not bind any United States Attorney outside the District of North Dakota, nor does it bind any state or local prosecutor. They remain free to prosecute Defendant for any offenses under their jurisdiction. This Plea Agreement also does not bar or compromise any civil or administrative claim.

12. Defendant understands the United States Attorney reserves the right to notify any local, state, or federal agency by whom Defendant is licensed, or with whom Defendant does business, of Defendant's conviction.

13. The parties agree that the base offense level under the Sentencing Guidelines for Defendant's conduct is 32. (USSG § 2D1.1 (c)(4) (Defendant's conduct involved greater than 3 kilograms of a mixture and substance containing heroin but less than 10 kilograms)).

> - 2 levels if safety-valve applies USSG §2 D1.1(b)(18)
> - 2 levels if zero-point offender applies USSG § 4C1.1

The United States reserves the right to argue a higher offense level at sentencing if it is determined through the pre-sentence investigation that Defendant is a "career offender" pursuant to USSG § 4B1.1.

14.    At sentencing, United States agrees to recommend a 2-level downward adjustment for acceptance of responsibility, provided Defendant has demonstrated a genuine acceptance of responsibility. (USSG § 3E1.1(a)).  The United States further agrees to move for an additional 1-level downward adjustment for timely notifying the United States of Defendant's intention to enter a guilty plea, thus permitting the Court and the United States to allocate their resources efficiently. (USSG § 3E1.1(b)).

15.    The parties stipulate and agree that, as of the date of this agreement, Defendant appears to qualify for a two-level downward adjustment for acceptance of responsibility. However, the government may, in its discretion, contest the adjustment under USSG § 3E1.1(a) should Defendant subsequently fail to continue to accept responsibility by failing to abide by the conditions of release, if applicable; by providing false information to the Court, the probation office, or the United States; by unlawfully using controlled substances; by attempting to obstruct justice; by breaching this Plea Agreement; or by acting in a way that is inconsistent with, or failing to act in any way

that is consistent with the granting of the adjustment under USSG § 3E1.1(a).

16.     Neither the Court nor the Probation Office is a party to the Plea Agreement. Neither the Court nor the Probation Office is bound by the Plea Agreement as to determining the Sentencing Guideline range. The Court may depart from the applicable guidelines range if the Court, on the record, states factors not contemplated by the Sentencing Guidelines' Commission to justify the departure. Both parties reserve the right to object to any departure. See USSG § 1B1.1, comment. (n.1) (defines "departure"). There may be other adjustments the parties have not agreed upon.

17.     At sentencing, the United States will recommend a sentence at the low end of the applicable Guideline range, or the minimum mandatory, whichever is greater.

18.     Defendant acknowledges and understands that if Defendant violates any term of this Plea Agreement, engages in any further criminal activity, or fails to appear for sentencing, the United States will be released from its commitments. In that event, this Plea Agreement shall become null and void at the discretion of the United States, and Defendant will face the following consequences: (1) all testimony and other information Defendant has provided at any time to attorneys, employees, or law enforcement officers of the government, to the Court, or to the Federal Grand Jury, may be used against Defendant in any prosecution or proceeding; and (2) the United States will be entitled to reinstate previously dismissed charges and/or pursue additional charges against Defendant and to use any information obtained directly or indirectly from Defendant in those additional prosecutions. Nothing in this agreement prevents the United States from prosecuting Defendant for perjury, false statement(s), or false declaration(s), if Defendant commits such acts in connection with this agreement or otherwise.

19.     Defendant acknowledges the provisions of Title 18, United States Code, Sections 2259 and 3663A, which require the Court to order restitution. Defendant agrees to pay restitution as may be ordered by the Court. Defendant acknowledges and agrees that the Court will order Defendant to make restitution for all loss caused by Defendant's conduct, regardless of whether counts of the Indictment will be dismissed as part of this Plea Agreement. Defendant further agrees to grant the United States a wage assignment, liquidate assets, or complete any other tasks the Court finds reasonable and appropriate for the prompt payment of any restitution or fine ordered by the Court.

20.     The United States will file a Supplement in this case, as is routinely done in every case, even though there may or may not be any additional terms. Defendant and Defendant's attorney acknowledge that no threats, promises, or representations exist beyond the terms of this Plea Agreement.

21.     **Defendant's Waiver of Appeal**. Defendant acknowledges having been advised by counsel of Defendant's rights to appeal the conviction or sentence in this case, including the appeal right conferred by 18 U.S.C. § 3742, and to challenge the conviction or sentence collaterally through post-conviction proceedings, including proceedings under 28 U.S.C. § 2255. Defendant understands these rights, and in exchange for the concessions made by the United States in this Plea Agreement, Defendant hereby knowingly and voluntarily waives these rights, except as specifically reserved herein. Defendant's waiver of these rights includes, but is not limited to, a waiver of all rights to appeal or to collaterally attack:  Defendant's conviction or sentence; all non-jurisdictional issues; any assessment, restitution or forfeiture order; the constitutionality of the applicable guidelines; and the constitutionality of the statute(s) to which Defendant is

pleading guilty or under which Defendant is sentenced, or to argue that the admitted conduct does not fall within the scope of the statute(s). Defendant reserves the right to appeal a sentence of imprisonment imposed above the upper end of the applicable guidelines range and the right to appeal or to collaterally attack the conviction or sentence based on a claim of ineffective assistance of counsel that challenges the validity of the guilty plea or this waiver.

22.     By signing this Plea Agreement, Defendant further specifically waives Defendant's right to seek to withdraw Defendant's plea of guilty, pursuant to Federal Rule of Criminal Procedure 11(d), once the plea has been entered in accordance with this agreement. The appellate court will enforce such waivers. Defendant agrees that any attempt to withdraw Defendant's plea will be denied and any appeal of such denial should be dismissed.

23.     Defendant understands that by pleading guilty he will be convicted, and that any individual convicted who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant's attorney has explained this consequence of his guilty plea.

24.     The Assistant United States Attorney, Trial Attorneys, and attorney for Defendant agree to abide by the provisions of Rule 32(f) of the Federal Rules of Criminal Procedure. The attorneys acknowledge their obligation to use good-faith efforts to resolve any disputes regarding the Presentence Investigation Report (PSIR) through a presentence conference or other informal procedures.

25.     Defendant acknowledges reading and understanding all provisions of the Plea Agreement. Defendant and Defendant's attorney have discussed the case

and reviewed the Plea Agreement. They have discussed Defendant's constitutional and other rights, including, but not limited to, Defendant's plea-statement rights under Rule 410 of the Federal Rules of Evidence and Rule 11(f) of the Federal Rules of Criminal Procedure.

AGREED:

MAC SCHNEIDER
United States Attorney

Dated: ___9/24/2024___

By: CHRISTOPHER C. MYERS
Assistant United States Attorney


MARLON COBAR
Chief, Narcotic & Dangerous Drug Section
Criminal Division
U.S. Department of Justice

Dated: 09/24/2024

TARA ARNDT
LERNIK BEGIAN
Trial Attorneys

Dated: _09/23/24_

JESSE ROCHA
Defendant

Dated: 9-23-24

CHRIS SNYDER
Attorney for Defendant

EN EL TRIBUNAL DE DISTRITO LOS ESTADOS UNIDOS
PARA EL DISTRITO DE DAKOTA DEL NORTE

| | |
|---|---|
| LOS ESTADOS UNIDOS DE AMÉRICA, | Numero de caso. 3:24-cr-00061-5 |
| Demandante, | |
| contra | |
| JESSE ROCHA, | **EL ACUERDO POR ESCRITO** |
| Acusado. | |

Conforme a la Norma 11(c)(1)(A) y (B) de la Normas Federales del Procedimiento Penal, los Estados Unidos de América, por sus abogados, Mac Schneider, Fiscal de los Estados Unidos para el Distrito de Dakota del Norte, y Christopher C. Myers, Asistente Fiscal de los Estados Unidos; Marlon Cobar, Jefe del departamento de narcóticos y drogas peligrosas, División Penal, y Tara Arndt y Lernik Begian, abogadas litigantes; el acusado, JESSE ROCHA; y el abogado del acusado, Chris Snyder, están de acuerdo con lo siguiente:

1.      El acusado reconoce que la acusación formal por el gran jurado se le acusa de una violación del Artículo 21, del Código Penal de los Estados Unidos, Secciones 846.

2.      El acusado ha leído la acusación y el abogado del acusado se la ha explicado totalmente al acusado.

3.      El acusado entiende completamente la naturaleza y los elementos del delito de lo cual lo acusan.

4.      El acusado se declarará culpable voluntariamente al Cargo Uno de la acusación formal por el gran jurado y va a aceptar la alegación de la confiscación.

1

5.     Las partes están de acuerdo que este Acuerdo por escrito se debe entregar como parte del registro judicial y está regido por las Normas Federales del Procedimiento Penal. Las partes están de acuerdo específicamente con que la Norma 11(c)(1)(C) no aplica. Si la Fiscalía hace las recomendaciones no obligatorias especificadas en este Acuerdo por escrito, entonces el acusado reconoce que este acuerdo reconoce se habrá cumplido. Con la excepción de la Norma 11(c)(5), si el Juez niega aceptar algún término del Acuerdo por escrito eso no le da el derecho al acusado a retirar su declaración de culpable.

6.     El acusado se declarará culpable porque el acusado, de hecho, es culpable del cargo. Al declararse culpable Cargo Uno, el acusado reconoce que:

Desde el enero del 2022 y continuamente hasta la fecha de la acusación formal por el gran jurado, en el distrito de Dakota del Norte, y los estados de Minnesota, California, Colorado, Georgia, Missouri, Texas, Arizona, y otras partes,

JESUS AMURAHABY CELESTIN-ORTEGA, a/k/a FLACO;
TRINIDAD TORRES MERAZ;
EDGAR HERNANDEZ, a/k/a IVAN EDGAR HERNANDEZ VASQUEZ;
MARIA DE LA CRUZ ESTRADA MORENO;
JESSE ROCHA;
RAFAEL BUENO-NAVA;
RYAN JAMES STEVENS;
CHRISTAN IVAN GONZALEZ; y
MARTINA LUCIA MENDEZ

a sabiendas e intencionalmente combinaron, conspiraron, confederaron y estuvieron de acuerdo juntos y con otros, conocidos y desconocidos, a poseer con la intención de distribuir 500 gramos o más de una mezcla y una sustancia que contenía una cantidad detectable de metanfetaminas, una sustancia regulada de la Lista II; 1000 gramos o más de una mezcla y una sustancia que

2

contenía heroína, una sustancia regulada de la Lista I; y 400 gramos o más de una mezcla y sustancia que contenía una cantidad detectable de fentanilo,[1] una sustancia regulada de la Lista II, una violación del Artículo 21, del código penal de los Estados Unidos, Sección 841(a)(1), y el Artículo 18, del código penal de los Estados Unidos, Sección 2.

## La cantidad de drogas

El acusado acepta que esta conspiración movió más de 500 gramos de una mezcla y sustancia que contenía una cantidad detectable de metanfetaminas, una sustancia regulada de la Lista II, con arreglo a lo estipulado en el artículo 21 U.S.C. § 841(b)(1)(A)(viii); más de 1000 gramos de una mezcla y sustancia que contenía una cantidad detectable de heroína, una sustancia regulada de la Lisa I, con arreglo a lo estipulado en el artículo 21 U.S.C. § 841(b)(1)(A)(i); y más de 400 gramos de una mezcla y sustancia que contenía fentanilo, una sustancia regulada de la Lista II, con arreglo a lo estipulado en el artículo 21 U.S.C. § 841(b)(1)(A)(vi). Estas cantidades son atribuidas al acusado como resulta de su conducta y la conducta de otros co-conspiradores que fueron razonablemente previsible para él.

## Los actos ilegales

Para apoyar esta conspiración y para lograr y cumplir los objetivos de tal, uno o más de los conspiradores cometieron los siguientes actos ilegales:

1.  Los miembros de la conspiración recibían sustancias reguladas de México. Las sustancias reguladas fueron importadas a los Estados Unidos y transportadas y enviadas a Dakota del Norte y otras partes en los Estados Unidos para distribuirlas. Los miembros de la conspiración pagaron dinero por estas sustancias reguladas directa o indirectamente a otros miembros en los EE.UU. y México;

---

[1]  21 U.S.C. § 841(b)(1)(A)(vi): La estructura química de fentanilo es N-fenil-N-[1-(2-feniletil-4-piperidinil] propanamida.                                3

2.  Además fue parte de dicha conspiración que los acusados y otros poseerían y tuvieron en su posesión con la intención de distribuir y distribuyeron 500 gramos o más de una mezcla y una sustancia que contenía una cantidad detectable de metanfetaminas, una sustancia regulada de la Lista II, dentro de los estados de Dakota del Norte, California, y otros;

3.  Además, fue parte de dicha conspiración que los acusados y otros poseerían y tuvieron en su posesión con la intención de distribuir y distribuyeron una mezcla y una sustancia que contenía un exceso de 1000 gramos de una cantidad detectable de heroína, una sustancia regulada de la Lista I, dentro de los estados de Colorado, y otras partes;

4.  Además, fue parte de dicha conspiración que los acusados y otros poseerían y tuvieron en su posesión con la intención de distribuir y distribuyeron una mezcla y una sustancia que contenía un exceso de 400 gramos de una cantidad detectable de fentanilo, una sustancia regulada de la Lista II, dentro de los estados de Dakota del Norte y otras partes;

5.  Además, fue parte de dicha conspiración que los acusados y otros usaron violencia y la amenaza de violencia para asegurar que los pagaran y para intentar a esconder sus actividades ilegales;

6.  Además, fue parte de dicha conspiración que los acusados y otros usaron servicios de telecomunicaciones, incluyendo varias aplicaciones de teléfonos inteligentes, para tratar de esconder las comunicaciones ilegales de las autoridades policiales;

7.  Además, fue parte de dicha conspiración que los acusados y otros usaron dinero de los EE. UU. para sus transacciones de drogas;

8.  El 16 de junio, 2023, co-conspiradores distribuyeron aproximadamente 15,000 pastillas (aproximadamente 1,500 gramos) de una mezcla y sustancia que contenía una cantidad detectable de

4

fentanilo, una sustancia regulada de la Lista II, en Fargo, Dakota del Norte;

9.  El 26 de julio, 2023, un pago controlado de $5,000 fue hecho por un co-conspirador en Rialto, California;

10.  El 5 de octubre, 2023, el co-conspirador Jesse Rocha distribuyó aproximadamente un kilogramo (aproximadamente 1,000 gramos) de una mezcla y una sustancia que contenía heroína en Aurora, Colorado;

11.  El 2 de noviembre, 2023, un agente del policía encubierto le pagó al co-conspirador Rafael Bueno-Nava $10,000 en efectivo en Fargo, Dakota del Norte, un pago parcial para sustancias reguladas;

12.  El 16 de noviembre, 2023, el co-conspirador Jesse Rocha tenía en su posesión con la intención de distribuir aproximadamente dos kilogramos (aproximadamente 2,000 gramos) de una mezcla y sustancia que contenía heroína en Thornton, Colorado;

13.  El 4 de diciembre, 2023, co-conspiradores enviaron aproximadamente 5 kilogramos (aproximadamente 10 libras) de una mezcla y sustancia que contenía metanfetaminas a Fargo, Dakota del Norte;

14.  El 14 de diciembre, 2023, un agente encubierto del policía entregó $5,000 a la casa de Maria de la Cruz Estrada Moreno en El Paso, Texas como un pago parcial para sustancias reguladas;

15.  El 4 de enero, 2024, un agente encubierto del policía le pagó al co-conspirador Rafael Bueno-Nava $10,000 en efectivo en Rockville, Minnesota, para un pago parcial para sustancias reguladas;

16.  El 12 de febrero, 2024, co-conspiradores enviaron aproximadamente 3.5 kilogramos (aproximadamente 7 libras de una sustancia que contenía metanfetaminas a Fargo, Dakota del Norte;

17.  El 12 de febrero, 2024, co-conspiradores enviaron aproximadamente 1 kilogramo (aproximadamente 2.2 libras) de una mezcla y sustancia que contenía heroína a Grand Forks, Dakota del Norte; y

18.  El acusado Jesus Amurahaby Celestin-Ortega, también conocido como el Flaco, fue el líder, el organizador, el gerente, y el supervisor de esta conspiración y lo hizo desde adentro de un centro penitenciario federal de seguridad media en Florence, Colorado;

Es un violación del artículo 21, del código penal de los EE. UU. sección 846 y <u>Pinkerton contra los Estados Unidos,</u> 328 EE.UU. 640 (1946).

En cuestión de la confiscación, el acusado acepta que al ser condenado por el Cargo Uno que se alega en la acusación formal por el gran jurado,

JESUS AMURAHABY CELESTIN-ORTEGA, a/k/a FLACO;
TRINIDAD TORRES MERAZ;
EDGAR HERNANDEZ, a/k/a IVAN EDGAR HERNANDEZ VASQUEZ;
MARIA DE LA CRUZ ESTRADA MORENO;
JESSE ROCHA;
RAFAEL BUENO-NAVA;
RYAN JAMES STEVENS;
CHRISTAN IVAN GONZALEZ; y
MARTINA LUCIA MENDEZ

deberán renunciar a los Estados Unidos, según el Artículo 21, del código penal de los Estados Unidos, Secciones 853 y 970, todos los derechos, los títulos, y el interés de cualquier propiedad constituida o derivada por la ganancias que obtuvieron, directa o indirectamente, como resulta de la violación del artículo 21, del código penal de los Estados Unidos, secciones 846, cualquier propiedad que usaron, o intentaron usar, de cualquier manera en parte, para cometer, o para facilitar la comisión de dichos violaciones, y una cantidad de dinero que equivale la cantidad total de las ganancias que obtuvieron como resulta del Cargo Uno, incluyendo, pero no limitándose a:

6

-   $307,721 dólares de los Estados Unidos.

Si alguna de las propiedades confiscables es por resulta de un acto u omisión de los acusados:

1.  no se puede encontrar al ejercer la diligencia debida

2.  ha sido transferida o vendida a o depositada con, una tercera parte;

3.  ha estado puesto fuera de la jurisdicción de la corte;

4.  ha disminuido en valor sustancialmente; o

5.  ha sido entremezclado con otra propiedad de lo cual no se puede dividir sin dificultad,

los Estados Unidos está autorizado a confiscar una propiedad sustituta según el artículo 21, del código penal de los Estados Unidos, sección 853(p), para buscar una confiscación de cualquier otra propiedad de dicho acusado hasta el mismo valor de la propiedad confiscable.

7.      El acusado entiende que las siguientes condenas máximas aplican:

<u>Cargo Uno</u>

| | |
|---|---|
| Encarcelamiento: | Cadena Perpetua |
| Multa: | $10 millones |
| Libertad Supervisada: | Al menos 5 años y hasta de por vida |
| Recargo: | $100 |

El acusado está de acuerdo con pagar el Actuario de Tribunal del Distrito de los Estados Unidos el recargo el día de su sentencia o antes.

8.      El acusado entiende que al declararse culpable el acusado renuncia derechos, incluyendo:

(a)      El derecho de tener un juicio rápido y público ante un jurado y derechos relacionados como los siguientes:

(i)      Un jurado estaría compuesta de doce (12) escogidas al azar. El acusado y

7

la abogada del acusado ayudarían a escoger a los jurados con eliminar a los jurados "por causas" probables con perjuicios o por demostrar otras razones de descalificación; o con eliminar a los jurados sin alguna razón por ejercitar supuestos impugnaciones perentorias. Los jurados tendrían que estar de acuerdo unánimemente antes de llegar a un veredicto. Los jurados sabrían que se presume que el acusado se inocente y que no podrían dar un veredicto de culpable al menos de que decidieran que el acusado fuera culpable fuera de toda duda razonable.

(ii)     Si tuviera un juicio sin un jurado, entonces el Juez encontrara los hechos y determinara si el acusado más allá de la duda razonable.

(iii)    Durante el juicio, ante un jurado o ante un Juez, la Fiscalía tiene que presentar testimonios de testigos y otras pruebas en contra del acusado. El abogado defensor puede carearlos y contrainterrogarlos. Sucesivamente, la defensa puede presentar testimonios de testigos y otras pruebas. Si algún testigo para la defensa no quiere comparecer voluntariamente al juzgado, el acusado puede obligarlos a comparecer con la autoridad de una citación judicial del Juez.

(iv)    Durante el juicio, el acusado tiene el privilegio de no incriminarse a sí mismo; por lo tanto, el acusado puede negar a testificar. No puede inferir que sea culpable si el acusado niega a testificar. El acusado puede decidir a testificar, pero no lo pueden obligar a testificar.

(b)    El acusado tiene el derecho de permanecer callado. Sin embargo, bajo los términos del Acuerdo por escrito, es probable que el Juez le haga preguntas al acusado sobre la

conducta delictiva del acusado para asegurarse que hay una base física para la declaración de culpable del acusado.

9.  El acusado entiende que al declararse culpable, renuncia todos los derechos enumerados en el parrafo anterior, y no habrá un juicio. El abogado defensor le ha explicado esos derechos, y las consecuencias de la renuncia del acusado.

10.  El Juez debe imponer una condena que es suficiente para cumplir con los propósitos establecidos en La Ley de Reforma Penal. Al hacer eso, el Juez debe considerar los factores establecidos en 18 U.S.C. § 3553(a) y debe consultar y considerar la Comisión de Sentencias de los Estados Unidos, Normas, (Nov. 2023) (USSG). El acusado entiende que la oficina de la fiscalía de los Estados Unidos informará plenamente el Tribunal del Distrito y la Oficina de la libertad condicional y servicios previo al juicio de los Estados Unidos de la naturaleza, el alcance, y la magnitud de la conducta, incluyendo todos los asuntos de agravamiento y mitigación relevante al asunto de la condena. Los Estados Unidos expresamente reserva el derecho de apelar una sentencia no razonable.

11.  Este Acuerdo por escrito solo le obliga legalmente al Fiscal de los Estados Unidos para el Distrito de Dakota del Norte y el departamento de narcóticos y drogas peligrosas de la División Penal, del Departamento de Justicia de los Estados Unidos. No le obliga legalmente a cualquier fiscal de los Estados Unidos afuera del Distrito de Dakota del Norte, ni le obliga legalmente a cualquier fiscal estatal o local. Ellos se quedan libres de procesar al acusado por cualquier delito dentro de su jurisdicción. También este Acuerdo por escrito no prohibe ni compromete ningún reclamos civil o administrativo.

12. El acusado entiende que el fiscal de los Estados Unidos reserva el derecho de notificar a cualquier agencias local, estatal o federal de lo cual el acusado tiene una licencia, o con quien el acusado hace negocios, de la convicción del acusado.

13.  Las partes están de acuerdo que el nivel base del delito según las Normas para Sentencias para la conducta del acusado es el nivel 32. (USSG § 2D1.1 (c)(4) (La conducta del acusado involucró más de 3 kilogramos de una mezcla y substancia que contenía heroína pero menos de 10 kilogramos)).

       - 2 niveles si aplica la válvula de seguridad USSG §2 D1.1(b)(18)
       - 2 niveles si aplica un delincuente de zero puntos USSG § 4C1.1

Los Estados Unidos reserva el derecho de alegar un nivel más alto para el delito en la audiencia para imponer la sentencia si determinan con la investigación previo a la sentencia que el acusado es un "delincuente profesional" según el USSG § 4B1.1.

14.  En la audiencia de la sentencia, los Estados Unidos está de acuerdo con recomendar que quiten 2 niveles por aceptar responsabilidad, si el acusado ha demostrado genuinamente que aceptó responsabilidad. (USSG § 3E1.1(a)). Además los Estados Unidos está de acuerdo con hacer una petición para quitar 1 nivel más por notificar al fiscal con tiempo oportuna de la intención del acusado de declararse culpable, con eso les permitió al Juez y a la fiscalía de asignar sus recursos eficazmente. (USSG § 3E1.1(b)).

15.  Las partes estipulan y acuerdan que, a partir de la fecha de este acuerdo, el acusado parece calificar para que le quiten dos niveles por aceptar responsabilidad. Sin embargo, el gobierno puede, a su discreción, puede refutar el ajuste de niveles según USSG § 3E1.1(a) si el acusado no continua a aceptar responsabilidad con no seguir las condiciones de la libertad, si aplica; con dar información falsa al Juez, la oficina de la libertad condicional, o a los Estados Unidos; con usar substancias reguladas ilegalmente; con intentar obstruir la justicia; con no cumplir este Acuerdo por escrito; o por comportarse de manera no consistente con, o falta de comportarse de manera que es

consistente con conceder el ajuste de niveles según USSG § 3E1.1(a).

16.     Ni el Juez ni la Oficina de la libertad condicional es parte del Acuerdo por escrito. Ni el Juez ni la Oficina de la libertad condicional está obligado por este Acuerdo por escrito para determinar el rango de las Normas para la sentencia. El Juez puede salir del rango de las normas que aplican si el Juez, en las actas, dice los factores no contemplados por las Normas de la Comisión de Sentencias para justificar una desviación. Las dos partes reservan el derecho de oponer de cualquier desviación. Vea USSG § 1B1.1, comentario. (n.1) (define "desviación"). Puede que haya otros cambios de niveles que las partes no se hayan acordados.

17.     En la audiencia de la sentencia, los Estados Unidos va a recomendar una sentencia en la parte baja del rango de las normas que aplican, o el mínimo obligatorio, el que sea mayor.

18.     El acusado reconoce y entiende que si el acusado viola algún término de este Acuerdo por escrito, participa en otras actividades criminales, o falta de comparecer para la audiencia de sentencia, los Estados Unidos estará liberado de sus compromisos. En este caso, este Acuerdo por escrito debe ser nulo y sin efecto a la discreción de los Estados Unidos, y el acusado debe enfrentar las siguientes consecuencias:  (1) todos los testimonios y otra información que el acusado le ha dado a abogados, empleados, u oficiales de las autoridades del gobierno, al Juez, o al Gran Jurado Federal, se puede usar en contra del acusado en cualquier prosecución o procedimiento; y (2) los Estados Unidos estará autorizado a restablecer cargos previamente desestimados y/o a ponerle cargos adicionales contra el acusado y puede usar cualquier información obtenida directa o indirectamente del acusado en esas prosecuciones adicionales. Nada en este acuerdo previene a los Estados Unidos de procesar al acusado de perjurio, declaraciones falsas, información falsa, si el acusado comete tales actos en conjunto con este acuerdo o de otra manera.

19.     El acusado reconoce que las normativas del Artículo 18, del código penal de los Estados Unidos, Secciones 2259 y 3663A, que requieren que el Juez ordene la resarcimiento. El acusado está de acuerdo con pagar el resarcimiento si se lo ordena el Juez. El acusado reconoce y está de acuerdo que el Juez va a ordenar que el acusado page el resarcimiento por cualquier pérdida causado por la conducta del acusado, independientemente de si cargos de la acusación formal por el gran jurado están o no desestimados como parte de este Acuerdo por escrito. Además el acusado está de acuerdo con concederles a los Estados Unidos una asignación de sueldo, liquidar sus activos, o cumplir cualquier otra función que el Juez determina razonable y apropiados para hacer un pago rápido para cualquier resarcimiento o multa ordenado por el Juez.

20.     Los Estados Unidos va a entregar un Suplemento en este caso, como se hace de forma rutinaria para cada caso, aunque puede que no haya ningún término adicional. El acusado y el abogado del acusado reconocen que no existe ninguna amenaza, promesa o representación más allá de los términos de este Acuerdo por escrito.

21.     **La renuncia de apelar del acusado.** El acusado reconoce que su abogado le ha informado de sus derechos de apelar esta convicción o una sentencia en este caso, incluyendo el derecho de apelar conferido por 18 U.S.C. § 3742, y para retar esta convicción o sentencia de manera colateral con procedimientos después de la convicción, incluyendo los procedimientos bajo el artículo 28 U.S.C. § 2255. El acusado entiende estos derechos, y en cambio por el otorgamiento hechos por los Estados Unidos en este Acuerdo por escrito, el acusado por este medio a sabiendas y voluntariamente renuncia estos derechos, con la excepción de lo especificado reservado y contenido aquí.  La renuncia de estos derechos del acusado incluyen, pero no se limitan a, una renuncia de todos los derechos de apelar o atacar de manera colateral: la convicción o la sentencia del acusado; todos los asuntos no jurisdiccionales; cualquier evaluación, resarcimiento u la orden de la confiscación; la constitucionalidad

de las normas que aplican; y la constitucionalidad de la(s) ley(es) de lo cual el acusado se va a declarar culpable o de lo cual lo van a sentenciar al acusado, o de alegar que la conducta admitida no está dentro del alcance de la(s) ley(es). El acusado reserva el derecho de apelar una sentencia de encarcelamiento que imponen arriba del rango de las normas que aplican y el derecho de apelar o atacar de manera colateral la convicción o la sentencia basado en un reclamo de ayuda ineficaz del abogado que reta la validez de la declaración de culpable o esta renuncia.

22.      Al firmar este Acuerdo por escrito, además el acusado renuncia específicamente el derecho de retirar su declaración de culpable, de conformidad a la Norma Federal del Procedimiento Penal 11(d), ya que se declara culpable según este acuerdo. La corte de apelaciones va a hacer cumplir estas renuncias. El acusado está de acuerdo que cualquier intento de retirar su declaración de culpable será negado y cualquier apelación de eso será negado y desestimado.

23.      El acusado entiende que al declararse culpable será condenado, y cualquier individuo que está condenado y no es ciudadano de los Estados Unidos puede ser deportado de los Estados Unidos, negado la ciudadanía, y negado la entrada a los Estados Unidos en el futuro. El abogado del acusado le ha explicado esta consecuencia de declararse culpable.

24.      El Asistente Fiscal de los Estados Unidos, los Abogados de Litigación, y el abogado del acusado están de acuerdo con seguir las reglas de la Norma 32(f) de las Normas Federales del Procedimiento Penal. Los abogados reconocen su obligación de usar esfuerzos de buena fe para resolver cualquier disputa acerca del Informe de la Investigación Previo al Juicio (PSIR) con una conferencia antes de la sentencia u otros procedimientos informales.

25.      El acusado reconoce que ha leído y ha entendido todas las secciones de este Acuerdo por escrito. El acusado y el abogado del acusado han hablado sobre el caso y han revisado el Acuerdo por

escrito. Ellos han hablado sobre los derechos constitucionales y otros derechos, incluyendo, pero no

limitándose a, los derechos de la declaración de culpable del acusado según la Norma 410 de las Normas

Federales de Evidencias y la Norma 11(f) de las Normas Federales del Procedimiento Penal.


ACORADO:


MAC SCHNEIDER
Fiscal de los Estados Unidos

Fecha: _____        _____
                                     Por: CHRISTOPHER C. MYERS
                                     Asistente Fiscal de los Estados Unidos


MARLON COBAR
Jefe del departamento de narcóticos y drogas peligrosas
Sección Penal
El Departamento de Justicia de los EE.UU.


Fecha: _____        _____
                                     TARA ARDNT
                                     LERNIK BEGIAN
                                     Abogadas de litigación

Fecha: __09/13/2024__              _____
                                     JESSE ROCHA
                                     El acusado

Fecha: _9-13-24____                _____
                                     CHRIS SNYDER
                                     El abogado defensor

14